# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.K., K.K, and K.H.**

**No. 17-0483** (Grant County 16-JA-12, 16-JA-13, & 16-JA-19)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.K., by counsel Lauren M. Wilson, appeals the Circuit Court of Grant County's April 27, 2017, order terminating his parental rights to J.K., K.K., and K.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) failing to require the DHHR to include him in the initial petition; (2) failing to immediately appoint him counsel; (3) adjudicating him as an abusing parent; (4) terminating his parental rights without imposing a less-restrictive dispositional alternative; and (5) denying post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2016, the DHHR filed an abuse and neglect petition that alleged the mother used inappropriate corporal punishment on the children, in addition to emotional, psychological, and verbal abuse. The petition also alleged that the mother failed to provide the children with necessary food, shelter, and supervision. According to the petition, the mother suffered from bipolar disorder, anxiety, depression, and ADHD, but refused medication for any of the conditions. Finally, the petition alleged that J.K. tested positive for THC at birth. At the time of the original petition, the mother informed the DHHR that petitioner resided outside West Virginia and that she was unaware of how to contact him. Accordingly, the DHHR did not name

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

petitioner as a respondent to its initial petition nor did it include any allegations of abuse or neglect against him therein.

In May of 2016, the circuit court held an adjudicatory hearing, during which the circuit court adjudicated the mother of abusing and neglecting the children. The circuit court also granted the mother a post-adjudicatory improvement period. During the resulting services, petitioner appeared with the mother when she attended visits with the children. Petitioner also attended some services with the mother. At this time, the mother informed the DHHR that petitioner had relocated to West Virginia.

In October of 2016, the mother gave birth to K.H. That same month, the DHHR filed an amended petition to include that child in the proceedings and also named petitioner as a respondent. According to the amended petition, petitioner abandoned and neglected the children due to his failure to provide them with the necessary financial, emotional, and psychological support. At this point, the circuit court appointed counsel for petitioner.

In November of 2016, the circuit court held an adjudicatory hearing in regard to the amended petition. During the hearing, the only witness to testify was a DHHR employee who indicated that petitioner had not provided the children with any support, either financially or emotionally. According to the record, petitioner did not have contact with the children until at least the beginning of these proceedings when he began attending visits. However, despite the fact that he began attending visits with the mother, petitioner still failed to provide for the children. Based upon the evidence, the circuit court adjudicated petitioner not only upon abandonment, but also upon its finding that petitioner "failed to protect the infant children and neglected the children by leaving them in the extended and sole care of the [mother] . . . with knowledge that [the mother] has mental health issues that rendered her incapable of parenting." The circuit court additionally granted petitioner a post-adjudicatory improvement period.

During a review hearing in February of 2017, the circuit court ordered K.H.'s return to the parents' custody, despite concerns over the other children's behavior related to visits with the parents. In March of 2017, the circuit court heard evidence concerning the visits between the children and the parents, including evidence that one of the mother's children exhibited severe negative effects following visits.

In April of 2017, the DHHR filed a motion to revoke petitioner's improvement period. According to the motion, petitioner stopped regularly participating in services and was travelling out of the state with K.H. without advising the DHHR. The motion further alleged that when the DHHR attempted to address the issues with the mother, she became angry and aggressive and refused to assure the DHHR of the child's safety. The motion further alleged that petitioner left K.H. in the care of an individual who lost custody of her own children and was not appropriate to provide care for K.H. Moreover, petitioner and the mother engaged in a domestic violence incident in April of 2017 that resulted in the issuance of a domestic violence protective order and criminal charges. As such, the DHHR removed K.H. from petitioner's care by emergency order. The circuit court then held a hearing on this motion and revoked petitioner's improvement period.

Later that month, the circuit court held a dispositional hearing, during which it found that petitioner failed to comply with the terms and conditions of his improvement period. The circuit court also found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future before terminating his parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

In his first assignment of error, petitioner argues that the DHHR erred in failing to name him as a respondent in its initial petition and that the circuit court erred in failing to appoint him counsel in a timely manner. Citing to West Virginia Code § 49-4-601, petitioner argues that the DHHR had a statutory duty to include him as a respondent in the initial petition and the circuit court had a duty to appoint him counsel.[3] We agree, insomuch as that statute requires notice of

---

[2]In addition to the termination of petitioner's parental rights, the circuit court also terminated the mother's parental rights to the children. According to the DHHR, the children are placed in a foster home with a permanency plan of adoption therein.

[3]According to West Virginia Code § 49-4-601(e)(1), petitioner was entitled to notice of the proceedings as a parent to the children, as that statute provides that "[t]he petition and notice of the hearing shall be served upon *both parents* and any other custodian, giving to the parents or custodian at least five days' actual notice of a preliminary hearing and at least ten days' notice of any other hearing." (emphasis added). Moreover, West Virginia Code § 49-4-601(f)(1) provides that

> [i]n any proceeding under this article, the child, his or her parents and his or her legally established custodian or other persons standing in loco parentis to him or her has the right to be represented by counsel at every stage of the proceedings

(continued . . . )

the proceedings to both parents and the appointment of counsel for parents in the circuit court's initial order. However, we find that the errors of which petitioner complains on appeal resulted in no actual prejudice to him and, accordingly, amount to harmless error. The record reflects that, although petitioner was not served with a copy of the initial petition, he had actual notice of the proceedings and actively participated in services prior to the filing of the amended petition naming him as a respondent. Importantly, petitioner was not in jeopardy of losing his parental rights at this stage, as the DHHR did not include any allegations of abuse or neglect against him in the initial petition. However, upon the filing of the amended petition that included petitioner as a named respondent and contained allegations against him, the circuit court immediately appointed counsel to represent petitioner. As such, it is clear that at all times petitioner was a named party to the action below, he was represented by counsel. Accordingly, we find that petitioner was not prejudiced by the DHHR's failure to include him as a respondent in the initial petition or the circuit court's appointment of counsel upon the filing of the amended petition.

Next, petitioner argues that the circuit court erred in adjudicating him based on abandonment. However, we note that in addition to the adjudication based on abandonment, the circuit court also adjudicated petitioner of neglecting the children. On appeal, petitioner does not challenge the circuit court's adjudication on the basis of neglect, which was based on substantial evidence. This included the circuit court's findings that petitioner "failed to protect the infant children and neglected the children by leaving them in the extended and sole care of the [mother] . . . with knowledge that [the mother] has mental health issues that rendered her incapable of parenting." This clearly amounts to a failure on petitioner's part to provide the children with, at a minimum, appropriate supervision. West Virginia Code § 49-1-201 defines a "neglected child" as one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent[.]

Here, it is clear that the circuit court had sufficient evidence upon which to adjudicate petitioner of neglecting the children. As such, we find that an analysis of the circuit court's additional finding concerning petitioner's abandonment of the children is unnecessary, given that the

---

and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed.

West Virginia Code § 49-4-601(f)(2) goes on to direct that "[c]ounsel shall be appointed in the initial order. For parents, legal guardians, and other persons standing in loco parentis, the representation may only continue after the first appearance if the parent or other persons standing in loco parentis cannot pay for the services of counsel."

4

finding of neglect was sufficient upon which to adjudicate petitioner as an abusing parent.[4] For these reasons, we find that petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in failing to consider less-restrictive dispositional alternatives to termination of his parental rights. According to petitioner, a less-restrictive option "would have been preferable to termination of parental rights." He further argues that termination of parental rights is only appropriate when there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. Petitioner is correct that West Virginia Code § 49-4-604(b)(6) instructs circuit courts to terminate parental rights upon such findings; however, he ignores the fact that the circuit court made these findings in the current matter.

Specifically, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect because he "failed to fully avail [himself] of the services offered[,]" in addition to the fact that he engaged in domestic violence during the proceedings and permitted K.H. to be cared for by an inappropriate individual, among other findings. This is in keeping with West Virginia Code § 49-4-604(c)(3), which establishes that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Moreover, the circuit court made findings addressing how termination of petitioner's parental rights served the children's best interests, including the fact that they required continuity in care and caretakers, along with the amount of time required to integrate them into a stable and permanent home. As such, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare.

We have also held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604]. . . may be employed without the

---

[4]West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse or neglect." (emphasis added).

5

use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because the record is clear that the circuit court had ample evidence upon which to base its findings, we find no error in the termination of petitioners' parental rights to the children.

Finally, we find no error in the circuit court's denial of post-termination visitation. On appeal, petitioner asserts that there were no issues with the visits between him and the children, although he acknowledges that J.K. did express some "troubling behaviors" after visitation. In short, petitioner argues that "[t]here were not any concerns with what was occurring during the visits with the . . . children" during the proceedings. We do not agree. In its dispositional order, the circuit court specifically found that "the children have, subsequent to . . . visits [with petitioner], manifested psychological distress by stuttering, pulling out hair to the point of baldness, biting, kicking, and tantrums[.]" This evidence is in stark contrast to petitioner's assertion that the visits had no negative impact on the children.

In discussing post-termination visitation, we have held as follows:

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). It is clear that the evidence overwhelmingly established that continued visitation with petitioner would not be in the children's best interests. As set forth above, the children suffered severe negative effects following visits. As such, we find that the circuit court's denial of post-termination visitation was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 27, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker